Frank A. Gulotta, J.
This is an action by a subcontractor to foreclose a mechanic’s lien in the amount of $11,000 for work done in connection with the construction of additions to four schools in the City of Long Beach.
*687 The defendant Benjamin, the general contractor, has interposed a counterclaim for $35,000 for breach of contract, and a second counterclaim for $15,000, charging that the plaintiff willfully exaggerated the amount claimed in its lien.
The written contract between the parties, dated September 2, 1960, is typed on defendant’s letterhead and consists of two small sheets of paper, only one of which relates to the work to be performed by the plaintiff. It is couched in the most general terms and obligates the Hansen Company to do the “ required ” excavation, trenching, backfill and demolition work at all four schools for the sum of $15,000.
Both sides agree that plaintiff worked up to November 9, 1960, was paid $4,000, and did no work after that date.
According to plaintiff’s proof, up to that time it had completed $11,175 worth of work in addition to some $1,629 in extras, and there remained only $2,086 of work to be done to have fully performed its agreement.
On the other hand, defendant’s proof, as limited by his bill of particulars, tended to show that it cost him $30,715.43 to complete the work which he says the written contract obligated the plaintiff to perform. Included in this amount is a bookkeeping item of $2,265 for supervision, 10% for lost profit and 15% for estimated overhead, all of which he claims to be entitled to as part of the cost of rectifying the breach.
This case was painstakingly tried by both sides for seven full trial days and there are 64 exhibits consisting of plans, specifications, bills, daily diaries on each job, and various other documents. While the plaintiff had virtually no records, defendant kept meticulous account of everything that took place on these projects.
Despite this great care, the contract which defendant prepared is woefully deficient in spelling out with any degree of certainty what plaintiff was obligated to do. While it is true that the agreement was based upon a written proposal submitted by plaintiff, the term “ required ” in describing the necessary work, without further specification, must be laid at defendant’s door for it was he who supplied that word and otherwise changed the proposal to its present contract form. It should be noted in passing that defendant is no novice in the building industry. Besides being a graduate architect from one of our leading universities he has had 15 years of experience in the construction of numerous public buildings.
Parol evidence was permitted to explain the ambiguity of the contract. The defendant says the word “ required ” meant strictly in accordance with the plans and specifications of the *688 main contract without deviation. On the other hand plaintiff says that what was required of him was specifically spelled out for him by the defendant himself through his “ take-off ” man. The undisputed testimony shows that when one of the Hansen brothers came to see the defendant for the purpose of submitting a bid, the latter referred him to a Mr. Fertitta who was defendant’s employee.- It was Mr. Fertitta’s function to examine the plans and specifications, to break down and take off what had to be done by each subcontractor and thus assist and enable the defendant to ultimately determine his bid price for the entire job.
The plans call for ‘ ‘ sand ’ ’ fill in some places and 1 ‘ porous ’ ’ fill in others, and of course, sand would qualify as “ porous ” in a dictionary sense of the word. It is only by having recourse to a special definition given in the specifications, that we know bank-run was intended in certain instances. However, the important point is that Fertitta, defendant’s employee who discussed the plans with plaintiff, thought sand was intended, so whether he was right or wrong, it can scarcely be inferred that he told plaintiff to figure on bank-run. Furthermore plaintiff says the architect approved beach sand. Defendant did not produce the school architect to rebut that testimony.
This is true also of the granite steps which Fertitta thought came under Specification No. 26 entitled “ Site demolition ” and consequently was not part of plaintiff’s work which included only 11 Building demolition”. Fertitta testified that in going over the plans and in visiting the site with Hansen, he did not tell Hansen he had to demolish those steps because he thought that was one of the things reserved to the defendant.
The consequences of these misunderstandings must fall on defendant. While a party might be held for $35,000 worth of work on a specific contract for $15,000 where he had already done work worth $11,000, this is not to be visited on him on an ambiguous contract prepared by the other side.
Considering the claims in reverse order, I am therefore of the opinion that defendant is not entitled to recover on his first counterclaim for the reasons above stated, plus the fact that after eliminating the two items above, and disallowing the charges for supervision, profit and overhead, his remaining costs do not amount in any event to the $11,000 balance due on the contract. On the second counterclaim I do not find willful exaggeration. While on the plaintiff’s theory of the case, he was required to give defendant credit for the amount of work still to be done against the contract balance ($2,000 against $11,000) he was entitled to lien the job for the extras also which *689 brings the amount in close enough alignment to negative any intentional exaggeration sufficient to bring into play section 39-a of the Lien Law which is penal in nature.
Turning now to plaintiff’s cause of action, it is elementary that in order to recover in contract one must show either due performance or facts excusing that performance. Only if full performance is excused or prevented by defendant is plaintiff entitled to a recovery. It is claimed by the plaintiff that it was ordered off the job by the defendant after a dispute with him as to the type of fill plaintiff was obligated to supply. The court finds, however, that plaintiff left this job and did not return to it, not because of any honest dispute as to the work it was required to do or because it was ordered off, but rather because the Hansens got “ fed up ” with defendant’s constant insistence that the work be done more systematically and methodically, so that delays would be avoided and other trades might proceed with their work according to schedule. Friction and ill-feeling developed between the parties. This is no sufficient reason for nonperformance and since a substantial part of the work remained undone, no recovery may be had. (Steel Stor. & Elevator Constr. Co. v. Stock, 225 N. Y. 173.) The second cause of action, upon the same facts, but brought against the defendant corporation upon the theory of undisclosed principal, must be dismissed for the same reason in addition to the fact that no proof was supplied at the trial to substantiate the claim of undisclosed principal.
Judgment is granted the defendants dismissing the complaint, and the plaintiff is granted judgment dismissing the counterclaims, all without costs.